## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CINDY C. ABBOTT and TRAVIS ABBOTT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  09-3261 |
| | ) | |
| SANGAMON COUNTY, a Body Politic, | ) | |
| NEIL WILLIAMSON, Sheriff, Sangamon | ) | |
| County, Illinois; and TROY M. SWEENEY, | ) | |
| Deputy Sheriff, Sangamon County, Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion for Summary

Judgment (d/e 37) filed by Defendants, Sangamon County, Neil

Williamson, and Troy M. Sweeney.

In August 2011, Plaintiffs Travis Abbott and Cindy Abbott filed a

Second Amended Complaint against Defendants.  Plaintiffs asserted,

pursuant to 42 U.S.C. § 1983, claims of excessive force, false arrest, and

false imprisonment.  Defendants have now moved for summary

judgment.  Defendant Sweeney asserts he is entitled to summary

judgment on all counts against him.  Defendants Sangamon County and
Williamson assert that Plaintiff had indicated an intent to voluntarily
dismiss the claims against them.

For the reasons that follow, summary judgment is granted in favor
of Defendant Sweeney.  Defendant Sweeney is entitled to summary
judgment on Plaintiffs' false arrest and false imprisonment claims because
Defendant Sweeney had probable cause to arrest them.  Defendant
Sweeney is also entitled to qualified immunity on all three of Plaintiffs'
claims.  Plaintiffs have not indicated how they intend to proceed against
Defendants Sangamon County and Williamson.  Plaintiffs shall so do so
by November 14, 2011.

## I. FACTS

On June 25, 2007, Animal Control received a call about a dog
running loose on Lyons Road in Spaulding, Illinois. (Undisputed Fact
52[1]).  Officers from Animal Control were very familiar with this dog, the

---

[1] Defendants filed a Statement of Undisputed Facts.  Plaintiffs did not dispute the
majority of Defendants' undisputed facts.  Citations to "Undisputed Facts" refer to those facts in
Defendants' Statement of Undisputed Facts that Plaintiffs did not dispute.

road, and the owners of the dog.  Animal Control had received calls

frequently because the dog was allowed to run loose and was very

aggressive.  (Undisputed Fact 52).

Officer John Moore, an Animal Control Officer for Sangamon

County, responded to the call.  (Undisputed Fact 53).  Officer Moore

observed the dog in the garage area unchained.  (Undisputed Fact 54).

He also observed Plaintiff Travis Abbott[2], the owner of the dog, run

inside the residence.  (Undisputed Fact 54).  For the next hour and a half

Officer Moore attempted to capture the dog.  (Undisputed Fact 55).

Travis interfered with attempts to catch dog by going to different doors

of the residence and calling for the dog, causing the dog to run around

the house trying to get inside.  (Undisputed Fact 56).  Several times

while Officer Moore was attempting to catch the dog, Travis yelled

threats at him and gave him the finger.  (Undisputed Fact 57).  Officer

Moore specifically recalled Travis yelling, "If you don't leave I'm going to

kick your ass."  (Undisputed Fact 58).  Travis also testified that he told

---

[2] Travis' deposition indicates he was 20 years old.

the Animal Control Officers that if they touched his dog, he would knock them out.  (Undisputed Fact 91).  Due to Travis' threatening words and behavior, Officer Moore called for a police officer to respond to the residence.  (Undisputed Fact 59).  Travis locked himself in the house when he was informed police officers were en route to the house. (Undisputed Fact 92).

The first officer to arrive was Riverton Police Officer Sergeant Jim Lawley.  (Undisputed Fact 60).  Sergeant Lawley was asked to stand by until the Sangamon County Deputy could arrive.  (Undisputed Fact 3). Sergeant Lawley went to the door and spoke to Travis through the door because he refused to open the door.  (Undisputed Fact 8, 60).  Sergeant Lawley asked Travis to step outside and talk with him, but Travis refused, stating, "Fuck you. I am not coming out there."  (Undisputed Fact 9).  Sergeant Lawley informed Travis that if he refused, the Deputy may get a warrant for him based on his refusal to cooperate. (Undisputed Fact 10).  Travis "continued to profanely refuse to open the door."  (Undisputed Fact 10).

When Deputy Sweeney arrived, Sergeant Lawley filled him in on what had transpired so far.  (Undisputed Fact 11).  Deputy Sweeney was told that Travis had threatened the Animal Control Officers and made a fist.  (Undisputed Fact 106).  Deputy Sweeney knocked on the front door but Travis refused to answer.  (Undisputed Fact 61).

Around that time Travis' mother, Plaintiff Cindy Abbott, arrived. (Undisputed Fact 14, 62).  Cindy parked her vehicle behind Deputy Sweeney's vehicle in the driveway.  (Undisputed Fact 62).  Deputy Sweeney met Cindy in the driveway to speak to her.  (Undisputed Fact 15).  Deputy Sweeney requested Cindy bring Travis out of the home so that he could hear Travis's side of the story.  (Undisputed Fact 16). Deputy Sweeney advised Cindy that if Travis refused to come out, he "may seek a warrant."  (Undisputed Fact 17).

Cindy went inside the residence and came back out with Travis. (Undisputed Fact 18).  Deputy Sweeney asked Travis what had happened.  (Undisputed Fact 19).  Travis admitted to verbally threatening the Animal Control Officers.  (Undisputed Fact 19).

Deputy Sweeney verified that Travis Abbott knew the persons he threatened were Animal Control Officers.  (Undisputed Fact 20). According to Sergeant Lawley, Deputy Sweeney advised Travis he was under arrest for obstructing/threatening the Animal Control Officers. (Undisputed Fact 21).  Deputy Sweeney testified he told Travis he was under arrest for assault.  (Undisputed Fact 107).

Travis protested being arrested and began to back away from Deputy Sweeney.  (Undisputed Fact 22).  Sergeant Lawley grabbed Travis' arm and advised him not to resist.  (Undisputed Fact 23).   Travis was handcuffed behind his back, and the cuffs were double locked by Deputy Sweeney.  (Undisputed Fact 23).  When Sweeney cuffed Travis, he made sure he could fit one finger in the cuffs to confirm the proper fit. (Undisputed Fact 113).  Travis became angry with Cindy once he was placed under arrest.  (Undisputed Fact 108).

Sergeant Lawley assisted Deputy Sweeney in escorting Travis to Sweeney's squad car.  (Undisputed Fact 24).   As Travis passed the Animal Control Officers, Travis yelled, "Thanks a lot assholes."

(Undisputed Fact 25).  Sergeant Lawley contacted dispatch and advised them the subject was in custody.  (Undisputed Fact 24).  Deputy Sweeney patted Travis down and advised him to behave and all would go well.  (Undisputed Fact 26).  Deputy Sweeney placed Travis in the rear seat of his squad car and seat belted him in.  (Undisputed Fact 27).  The squad car did not have a partition or prisoner transport shield dividing the front and back seats.  (Undisputed Fact 68, 114).

After Travis was handcuffed, Cindy went inside the home to lock up and use the restroom.  (Undisputed Fact 81).  When she came back out Deputy Sweeney was backing his squad car out of the drive way. (Undisputed Fact 82).

After Travis was placed in the squad car, he became agitated, raised his legs up, and struggled around in the back seat.  (Undisputed Fact 67). Travis testified he immediately maneuvered his handcuffs from behind his back to the front of his body.  (Undisputed Fact 96).   Deputy Sweeney was attempting to back up his squad car when Travis became very agitated.  (Undisputed Fact 68).  Travis was screaming at his

mother, Cindy, to get him out of the squad car.  (Undisputed Fact 115).
Travis denies, however, that he was attempting to escape.  (Response to
Fact 73).

Deputy Sweeney noticed Travis had manuvered his handcuffs from
behind his back to the front of his body.  (Undisputed Fact 97).  Deputy
Sweeney reached back to try to gain control of Travis.  (Undisputed Fact
116).  Deputy Sweeney's foot slipped off of the brake and his car rolled
into Cindy's vehicle.  (Undisputed Fact 116).  Deputy Sweeney put the
car in park and got out of his vehicle.  (Undisputed Fact 117).

Sergeant Lawley testified that he was speaking with Cindy  "at the
time the vehicles came together."  (Undisputed Fact 30).  Cindy began
screaming.  (Undisputed Fact 30).  Sergeant  Lawley attempted to calm
Cindy, telling her that Deputy Sweeney just bumped Cindy's vehicle  and
that it would be covered by insurance.  (Undisputed Fact 30).  Cindy did
not calm down and continued screaming about her son being arrested
and her car being damaged.  (Undisputed Fact 31).

Cindy was still screaming at Deputy Sweeney when he exited his

vehicle.  (Undisputed Fact 32).  Cindy began walking toward Deputy
Sweeney screaming at him.  (Undisputed Fact 33).  As Cindy was
running toward Deputy Sweeney's squad car, Travis was still "going
nuts" in the back seat of the squad car.  (Undisputed Fact 69).

Deputy Sweeney was afraid Cindy was trying to help her son
escape.  (Undisputed Fact 120).  Deputy Sweeney held up his hand and
told Cindy to stop.  (Undisputed Fact 119).  Cindy ignored Deputy
Sweeney's order and continued toward the squad car.  (Undisputed Fact
121).  Deputy Sweeney again ordered Cindy to stop and warned her if
she did not stop, he would use his taser.  (Undisputed Fact 122).  Deputy
Sweeney warned Cindy a second time that he would use his taser if she
did not stop.  (Undisputed Fact 123).

While Cindy did not dispute these facts, she testified she did not
recall if she was ordered to stop by Deputy Sweeney.  (Undisputed Fact
86).   She did recall that Deputy Sweeney told her to calm down.
(Undisputed Fact 87).  Cindy also testified that she was moving to her
vehicle to look at it and screamed, "I can't believe you hit my vehicle."

(Plaintiffs' Additional Fact 1).

Deputy Sweeney deployed his taser into Cindy's abdominal area, and Cindy went to the ground. (Undisputed Fact 35). Cindy was ordered to get down on her stomach. (Undisputed Fact 125) She did not comply with that order, so the taser was activated again. (Undisputed Fact 125) Cindy then complied with the order and was handcuffed. (Undisputed Fact 126). While Cindy does not dispute those facts, she also asserts that she could not move or do anything after she was tasered the first time. (Response to Fact 36, 37). She asserts she could not move over on to her belly and Deputy Sweeney tasered her the second time. (Response to Facts 36, 37).

Deputy Sweeney went to the backseat of the squad car to try to calm Travis. (Undisputed Fact 72). Travis denies, however, that when Deputy Sweeney opened the rear door to the squad car, he continued to act wild, attempted to escape, or fought Deputy Sweeney. (Response to Fact 74). According to Travis, Deputy Sweeney went to Travis' side of the car, "got on top of [him] and dropped an elbow on [his] throat and

just tried to ta[s]e [him.] The top was off of it, the ta[s]er. . . .  And he tried to getting me all over my whole body.  And he did, he kept getting me, getting me, getting me.  I was trying to fight with him."  (Plaintiffs' Additional Fact 3).  Travis testified that Deputy Sweeney told Travis, "just let me get you one good time" and started "getting" Travis all over his arm.  (Plaintiffs' Additional Fact 4).  Deputy Sweeney touched Travis with his taser for "little second bursts."  (Undisputed Fact 98).

Travis does not dispute that at some point he struggled with Deputy Sweeney in the back seat of the car and at one point was "out powering" Deputy Sweeney.  (Undisputed Fact 99, 100).  According to Travis, Deputy Sweeney then got Travis out of the squad car, threw Travis on his face, gave Travis the "knee bomb" and used the taser three more times on Travis' back.  (Plaintiffs' Additional Fact 4).

Travis also admits that Deputy Sweeney "drive stunned" Travis with his taser until Travis stopped fighting, removed Travis from the vehicle, and resecured the handcuffs.  (Undisputed Fact 75).  Travis was advised to stay face down, and he complied with the order.  (Undisputed

Fact 45).  Travis and Cindy Abbott were then transported to jail in

separate squad cars.  (Undisputed Fact 48).

Finally, Travis and Cindy did not dispute the statement of fact

asserting that Deputy Sweeney's use of force against Cindy and Travis

Abbott was justified.  (Undisputed Fact 49). They did dispute, however,

whether Deputy Sweeney used force above what was necessary to gain

control of them.  (Response to Disputed Fact 50).

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's  claims

are based on federal law.  See 28 U.S.C. § 1331 ("The district courts shall

have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States").  Venue is proper

because the events giving rise to the claim occurred in Sangamon

County, Illinois.  See 28 U.S.C. § 1391(b) (a civil action where

jurisdiction is not founded solely on diversity of citizenship may be

brought in a judicial district where a substantial part of the events or

omissions giving rise to the claim occurred).

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Fed.R.Civ.P. 56(c).  A moving party must show that no reasonable fact-finder could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997).  Facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn for the non-movant.  See Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).

### IV.  ANALYSIS

A.    Defendants Sangamon County and Neil Williamson

In the Motion for Summary Judgment, counsel for Defendants asserted that Plaintiffs' counsel had informed him that Plaintiffs intended

to voluntarily dismiss their claims against Sangamon County and Neil

Williamson.  Defense counsel stated that if that were not the case,

Defendants Sangamon County and Williamson would request the

opportunity to file a dispositive motion on behalf of Sangamon County

and Williamson.  Plaintiffs did not address this issue in their

Memorandum in Support of Plaintiffs' Second Response to Defendant's

Motion for Summary Judgment (d/e 42), although they did address the

issue in their original memorandum in support (d/e 39), which this court

struck for failure to comply with the local rules.

Plaintiffs are directed to file, by November 14, 2011, a document

indicating what their intention is regarding Defendants Sangamon

County and Williamson.

B.    Deputy Sweeney is Entitled to Summary Judgment on the False
      Arrest and False Imprisonment Claims

Deputy Sweeney asserts he is entitled to summary judgment on

Plaintiffs' false arrest and false imprisonment claims.  Deputy Sweeney

asserts that he had probable cause to arrest them.

To state a claim for false arrest, Plaintiffs must allege that Deputy

Sweeney arrested them, that he did not have probable cause to arrest them, and that Deputy Sweeney was acting under color of law.   See Muczynski v. Lieblick, 2010 WL 3328203, at *5 (N.D. Ill. 2010).  "A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause."  National Casualty Co. v. McFatridge, 604 F.3d 335, 344 (7th Cir. 2010).   The existence of probable cause is an absolute defense to a § 1983 false arrest and false imprisonment claim.  Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006).

"Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense."  United States v. Reed, 443 F.3d 600, 603 (7th Cir. 2006).  "It is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances."  Id. Generally, whether there is probable cause is a jury question, but "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," a court may decide the

issue.  <u>Booker v. Ward</u>, 94 F.3d 1052, 1058 (7th Cir.1996) (citation and internal quotations omitted).

Here, the undisputed facts demonstrate that Deputy Sweeney had probable cause to arrest Travis.  Travis does not dispute that he told the Animal Control officers that he was going to kick their ass if they touched his dog.  Travis also did not dispute the assertion by Deputy Sweeney that he was told that Travis threatened the Animal Control officers and shook his fist at them.  These undisputed facts demonstrate, as a matter of law, that Deputy Sweeney had probable cause to arrest Travis for assault or disorderly conduct.  <u>See</u> 720 ILCS 5/12-1(a) ("[a] person commits an assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery"); <u>Kijonka v. Seitzinger</u>, 363 F.3d 645, 647 (7th Cir. 2004) (assault involves a threatening gesture accompanied by threatening words that create a reasonable apprehension of an imminent battery); 720 ILCS 5/26-1(a)(1) ("[a] person commits disorderly conduct when he knowingly . . . [d]oes any act in such

unreasonable manner as to alarm or disturb another and to provoke a breach of the peace"); In re D.W. , 150 Ill. App. 3d 729, 731 (1986) (finding that the minor's statement to another minor that he was going to "kick his ass" constituted disorderly conduct); Reher v Vivo, 656 F.3d 772, 777 (2011 ("[a]n arrest for disorderly conduct is justified when the defendant directly harasses or threatens other people").

Similarly, Deputy Sweeney had probable cause to arrest Cindy. Cindy did not dispute that she was screaming at Deputy Sweeney and running toward his squad car  while Travis was still "going nuts" in the back seat of the squad car."  Cindy also did not dispute the fact that Deputy Sweeney thought Cindy was trying to help Travis escape. Further, Cindy did not dispute that she ignored Deputy Sweeney's order to stop, she continued toward the squad car, and that she did not comply with orders to get down on her stomach  (although she testified that she was physically unable to roll over on to her stomach).   Under these facts, Deputy Sweeney had probable cause to arrest Cindy for obstructing a peace officer (by trying to help Travis escape) and resisting arrest (by not

complying with Sweeney's verbal orders).  <u>See</u> 720 ILCS 5/31-1 ("[a]

person who knowingly resists or obstructs the performance by one known

to the person to be a peace officer . . . commits a Class A misdemeanor").

 Therefore, Deputy Sweeney is entitled to summary judgment on

Plaintiffs' false arrest and false imprisonment claims.

C.      Deputy Sweeney is Entitled to Qualified Immunity on Plaintiffs'
        False Arrest, False Imprisonment, and Excessive Force Claims

        1.      <u>Excessive Force Claims</u>

        Where an excessive force claim arises in the context of an

investigatory stop or an arrest, the claim is analyzed under the Fourth

Amendment's reasonableness standard.  <u>Graham v. Connor</u>, 490 U.S.

386, 394  (1989).  Whether the force used is "reasonable" depends upon

the facts and circumstances of the particular case, "including the severity

of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officers or others, and whether he is actively resisting

arrest or attempting to evade arrest by flight."  <u>Graham</u>, 490 U.S. at 396.

The test is an objective one, and the "officer's subjective belief or

motivations are irrelevant."  <u>Messer v. Indiana State Police</u>, 586

F.Supp.2d 1044, 1060 (N.D. Ind. 2008).

Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 397. As stated in Graham:

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.

Id.; see also Bell v. Irwin, 321 F.3d 637, 640 (7th Cir. 2003) (noting that the "fourth amendment does not require second-guessing" and "when material facts (or enough of them to justify the conduct objectively) are undisputed, then there would be nothing for a jury to do except second-guess the officers, which Graham held must be prevented").

Deputy Sweeney asserts that he is entitled to qualified immunity on both Cindy and Travis' excessive force claims. Plaintiffs' response consists of a recitation of black letter law and the statement that "[q]ualified immunity also does not apply because of the excessive and

unreasonable force used to obtain the Plaintiffs' seizure."

Qualified immunity protects governmental actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances the interest of holding "public officials accountable when they exercise power irresponsibly" with the interest in shielding officials from "liability when they perform their duties reasonably." Pearson v. Callhan, 555 U.S. 223, 231 (2009). "[Q]ualified immunity provides 'ample room for mistaken judgments' and protects government officers except for the 'plainly incompetent and those who knowingly violate the law.'" Saffell v. Crews, 183 F.3d 655, 658 (7th Cir. 1999), quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991).

To determine whether a defendant is entitled to qualified immunity, a court must determine: (1) "whether the facts alleged show that the officer's conduct violated the plaintiff's constitutional rights" and

(2) "whether the right was clearly established in light of the specific context of the case so that a reasonable official would have understood that his conduct would violate the right."  Patterson v. Burns, 670 F.Supp.2d 837, 847 (S.D. Ind. 2009), citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S.  223.  The Court may, in its discretion, address the second prong of the test first. Pearson, 555 U.S. at 242.

Plaintiffs "bear[] the burden of establishing the existence of the allegedly clearly established constitutional right."  Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993) (citations omitted; internal quotation marks omitted).  Plaintiffs may do this by either pointing to a closely analogous case or by showing the force used was so plainly excessive that Deputy Sweeney should have known he was violating Plaintiffs' rights.  Chelios v. Heavener, 520 F.3d 678, 691 (7th Cir. 2008); Smith v. Darlin, 1999 WL 498586, at *5 (N.D. Ill. 1999), aff'd,  242 F.3d 737 (7th Cir. 2001).

Addressing the second prong of this test, this Court notes that Deputy Sweeney is entitled to qualified immunity if a reasonable officer

could have rationally believed that his conduct was constitutional in light of the clearly established law and the information Deputy Sweeney possessed at the time the incident occurred.  Anderson v. Creighton, 483 U.S 635, 639 (1987).  It is clearly established that taking punitive actions against a suspect who has been subdued is an exercise of excessive force.  Ruffin v. Kane County Sheriff Dept.,  2006 WL 2088186, at *14 (N.D. Ill. 2006) (finding the officer was not entitled to qualified immunity where the plaintiff claimed he was lying on his stomach, handcuffed, unresisting, and moaning when the officer kicked him three times).  Here, however, the facts demonstrate that neither Travis nor Cindy were subdued when the force was used but were continuing to resist or failing to follow orders.

This Court must, for purposes of summary judgment, accept Plaintiffs' version of the facts and construe the facts in the light most favorable to Plaintiffs.  See, e.g., Schneider v. Love, 2011 WL 635582, at 7 (N.D. Ill. 2011) (accepting, for purposes of summary judgment, the plaintiff's version of the events, which included his testimony that he

offered no resistence following the initial tasing and was handcuffed or immobilized within seconds of the first tasing).  However, when examining qualified immunity, "what matters [for the closely analogous case analysis] is not the arrestee's perspective but rather the perspective of a reasonable officer on the scene."  <u>Smith v. Darlin</u>, 1999 WL 498586, at *4 (N.D. Ill. 1999) (noting that it did not matter why the motorist initially refused to pull over).  Therefore, Travis' subjective motivation – that he was not trying to escape– and Cindy's explanation for why she did not roll over onto her stomach – that she was unable to move– do not affect the qualified immunity analysis.  The focus is the perspective of the reasonable officer on the scene faced with the factual version of the events taken in the light most favorable to Plaintiffs.

Even taking the facts in the light most favorable to Travis and Cindy, Deputy Sweeney acted reasonably in believing that the use of the taser under the circumstances was reasonable.  Specifically, Travis did not dispute the following facts: (1) that he moved his handcuffed hands from behind his back to the front of his body; (2) he was "going nuts" in the

back seat of the squad car when Deputy Sweeney was dealing with Cindy; (3) the squad car did not have a partition; (4) Deputy Sweeney thought Travis was trying to escape (although Travis denied he was trying to escape); and (5) that Travis struggled with Deputy Sweeney in the back of the squad car and was at one point "out powering" Deputy Sweeney.

Although Travis disputes whether he was "going wild" in the back seat of the car when Deputy Sweeney opened the door (after tasering Cindy), he does not dispute that his handcuffed hands were in front of his body and that he had been "going nuts" previously.  Travis also does not dispute that he fought with Deputy Sweeney in the backseat of the car.  The use of the taser in the back seat of the car was conduct a reasonable officer could have rationally believed was constitutional in light of the clearly established law and the information the officer possessed at the time the incident occurred.  See, e.g. Zivojinovich v. Barner, 525 F.3d 1059, 1073 (11th Cir. 2008) ("We have previously held that in a 'difficult, tense and uncertain situation" the use of a taser gun to

subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force").

The parties dispute whether Deputy Sweeney used a taser on Travis after Deputy Sweeney pulled Travis out of the squad car.  Travis asserts that Deputy Sweeney threw Travis out of the car, gave him the "knee bomb," used the taser three more times, and then re-handcuffed Travis. At this stage in the litigation, the Court must credit Travis' version of the events and view the facts in the light most favorable to Travis.

However, Travis does not assert that he had stopped resisting when Deputy Sweeney pulled him out of the car.  Travis admits he was fighting with Deputy Sweeney in the car, at one point almost overpowering Deputy Sweeney.  Deputy Sweeney is entitled to qualified immunity because a reasonable officer could have believed he was entitled to use force on an arrestee who continued to physically resist or who failed to submit to the officer's authority.  See Brooks v. City of Aurora, 653 F.3d 478, 487 (7th Cir. 2011) (finding the officers were entitled to summary judgment because it would not have been obvious to a reasonable officer

that the use of pepper spray was unlawful on an "arrestee who has ceased active, physical resistence for a couple of seconds but has not submitted to the officer's authority, has not been taken into custody and still arguably could pose a threat of flight or further resistence").  Although the plaintiff in Brooks was not handcuffed and Travis was handcuffed, Travis had manipulated his handcuffs to the front of his body.  In addition, Travis fought with Deputy Sweeney in the back of the squad car.  Even if Travis had momentarily stopped resisting when Deputy Sweeney pulled him out of the car, a reasonable officer could believe that Travis had not submitted to the officer's authority.  Moreover, based on the undisputed fact that Deputy Sweeney used the taser until Travis stopped fighting, Deputy Sweeney's use of force was no more than that necessary to gain control of Travis.  See, e.g., Smith v. City of Chicago, 242 F.3d 737, 744 (7th  Cir. 2001) (use of force "was not high, let alone excessive" where officers who reasonably believed plaintiff was trying to flee pulled him from his car, pinned his arms, and slammed him against his car hood during handcuffing).

Similarly, Deputy Sweeney is entitled to qualified immunity as to Cindy's claim of excessive force.  Cindy does not dispute that she was screaming at Deputy Sweeney both about her car and her son.  Cindy also admits that she moved toward Deputy Sweeney, although she asserts that she did so to look at her own vehicle.  Cindy admits that Deputy Sweeney ordered Cindy to stop, although Cindy herself testified that she did not recall if she was ordered to stop.  See, e.g., Knight v. Thomas, 2008 WL 1957905, *13 (N.D. Ind. 2008) (holding that the plaintiff could not contradict unequivocal testimony about what transpired between the time the officer grabbed him and he was taken to the ground with his testimony that he does not remember what happened).  Cindy admitted she did not comply with Deputy Sweeney's orders to stop or to get down on her stomach.  Cindy also did not dispute the fact that Deputy Sweeney thought Cindy was trying to help her son escape.  A reasonable officer would have believed that employing a taser gun under the version of the facts Cindy admitted occurred would not  violate Cindy's constitutional rights.  Cf. Lewis v. Downey, 581 F.3d 467, 479

(7th Cir. 2009) (officer not entitled to qualified immunity where, under the plaintiff's version of the facts, a reasonable officer would understand that employing a taser gun would violate the plaintiff's constitutional rights; the plaintiff asserted he was in bed, weakened, and docile when the officer told him one time to get out of bed and was tasered before he could even turn his head).

Cindy also challenges the second employment of the taser. Deputy Sweeney tasered Cindy a second time when she was on the ground but did not comply with the order to roll over on her stomach. Cindy testified that she could not roll over because she could not move after being struck by the taser the first time. However, "what matters for this question is not the arrestee's perspective but rather the perspective of a reasonable officer on the scene." Smith, 1999 WL 498586, at *4 (wherein the plaintiff asserted he did not stop his vehicle because he did not know the defendants were police officers when they attempted to pull him over), citing Graham, 490 U.S. at 396.

Moreover, the facts admitted to here do not show that the force

used on either Travis or Cindy was so plainly excessive that the police

officers should have been on notice that they violated the Fourth

Amendment.  <u>See</u> <u>Rice v. Burks</u>, 999 F.2d 1172, 1174 (7th Cir. 1993)

(finding the plaintiff "could have evaded the application of qualified

immunity without identifying a closely analogous case if he showed that

the force used was so plainly excessive that the police officers should have

been on notice that they were violating the Fourth Amendment").

For these reasons, Deputy Sweeney is entitled to qualified

immunity on Plaintiffs' excessive force claims.

2.     <u>False Arrest and False Imprisonment Claims</u>

Moreover, even if Deputy Sweeney did not have probable cause to

arrest Travis and Cindy, he would be entitled to qualified immunity.  <u>See</u>

<u>BeVier v. Hucal</u>, 806 F.2d 123, 126 (7th Cir. 1986) ("Police officers are

allowed to make [reasonable mistakes]").  The constitutional right to be

free from arrest without probable cause was, without question, "clearly

established" prior to" Travis and Cindy's arrest.  <u>Jenkins v. Keating</u>, 147

F.3d 577, 584 -85 (7th Cir. 1998).  However, the question here is

whether a reasonable officer could have believed Travis' and Cindy's arrests were lawful in light of the clearly established right to be free from arrest without probable cause and the information Deputy Sweeney possessed at the time he arrested them.  See Id.

Here, given the information Deputy Sweeney possessed at the time, Deputy Sweeney reasonable believed that Travis had committed the offense of assault or disorderly conduct.  See, e.g., Reher, 656 F.3d at 777; Juriss v. McGowan, 957 F.2d 345, 351 (7th Cir. 1992) (officer entitled to qualified immunity if a reasonable officer, knowing what the officer knew, would have believed that there was probable cause to arrest).  Deputy Sweeney also reasonably believed that Cindy was attempting to help Travis escape and failing to comply with his verbal orders.  "[A]n officer faced with the circumstance here could  have reasonably, but mistakenly, believed" that Cindy was trying to help Travis escape.  Reher, 656 F.3d at 777 (finding qualified immunity, noting that qualified immunity applies to reasonable mistakes).

## V. CONCLUSION

For the reasons stated, Deputy Sweeney's Motion for Summary

Judgment (d/e 37) is GRANTED.  Plaintiffs are directed to inform this

Court of its intentions regarding Defendants Sangamon County and Neil

Williamson by November 14, 2011.

ENTER: November 3, 2011

FOR THE COURT:

                               s/Sue E. Myerscough
                            SUE E. MYERSCOUGH
                            UNITED STATES DISTRICT JUDGE